First Vagabonds Church of God et al v. City of Orlando, Florida Doc. 1

FILED
2006 OCT 12 PM 2:49
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.** 6:06-cv-1583-ORL-31KRS

**FIRST VAGABONDS CHURCH OF GOD,**
**an unincorporated association; BRIAN NICHOLS;**
**ORLANDO FOOD NOT BOMBS,**
**an unincorporated association;**
**RYAN SCOTT HUTCHINSON,**
**BENJAMIN B. MARKESON; ERIC MONTANEZ;**
**and ADAM ULRICH;**

**Plaintiffs,**

**v.**

**CITY OF ORLANDO, FLORIDA**

**Defendant.**

______________________________________)

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs FIRST VAGABONDS CHURCH OF GOD; BRIAN NICHOLS; ORLANDO FOOD NOT BOMBS, RYAN SCOTT HUTCHINSON, BENJAMIN B. MARKESON; ERIC MONTANEZ; and ADAM ULRICH bring this Complaint for declaratory relief stating that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the freedom of speech, free exercise of religion, equal protection and due process clauses of the United States Constitution and Florida's Religious Freedom Restoration Act, FLA.

Dockets.Justia.com

STAT. § 761.02 *et seq.* In addition, Plaintiffs request injunctive relief to enjoin Defendant from enforcing these provisions. Plaintiffs also seek appropriate monetary damages.

## I. STATEMENT OF THE CASE

1. Motivated by humanitarian and religious beliefs, Plaintiffs have provided, and continue to provide, food to homeless and/or hungry persons in downtown Orlando public parks. This lawsuit seeks to prevent the Defendant CITY OF ORLANDO from enforcing its ordinance restricting such activities in its parks.

## II. INTRODUCTION

2. Plaintiffs bring this action for declaratory, injunctive and monetary relief pursuant to 28 U.S.C. 2201 and 42 U.S.C. 1983, requesting this Court to declare the Code of the City of Orlando § 18A.09-1 and § 18A.09-2 (hereinafter "the ordinance") in violation of the First and Fourteenth Amendments to the U.S. Constitution and enjoin enforcement of the ordinances by the Defendant.

3. This action arises under 42 U.S.C. § 1983; the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Fourteenth Amendment to the United States Constitution.

4. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3). In addition, this Court has supplemental jurisdiction over the claim of

violation of Florida's Religious Freedom Restoration Act, FLA. STAT. § 761.02 *et seq.*

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391. All parties reside and/or conduct business in and all actions relevant to this claim occurred in Orange County, Florida.

## III. PARTIES

6. Plaintiff FIRST VAGABONDS CHURCH OF GOD, an unincorporated association, is a ministry by the homeless for the homeless. As set forth in its founding documents, the church seeks to help street Christians who, either by bad choices or circumstances beyond their control, have ended up in a state of poverty or homelessness. Acts of charity toward the poor and homeless are a central tenet of the ministry and are an essential and required part of the religious worship of its members.

7. Plaintiff BRIAN NICHOLS (hereinafter "NICHOLS") is the pastor of the First Vagabonds Church of God, a homeless fellowship that meets at downtown parks. His efforts to aid the homeless stem from his religious conviction that food and survival are fundamental human rights, and he sincerely believes that acts of charity toward the poor and homeless are an essential and required part of religious worship.

8. Plaintiff ORLANDO FOOD NOT BOMBS is an unincorporated association affiliated with the grassroots international Food Not Bombs movement, which is organized according to principles of egalitarianism, consensus, cooperation, autonomy, and decentralization. The group shares food with homeless and hungry people in Orlando to call attention to society's failure to provide food and housing to each of its members and to reclaim public space. The name Food Not Bombs states the group's most fundamental principle: society needs to promote life, not death. As the Food Not Bombs handbook states:

> Our society condones and even promotes violence and domination. This affects us in our everyday lives through the constant threat of violent crime, domestic violence, police repression and the threat of total annihilation from nuclear war. Such constant exposure to violence, including the threat thereof, leads many people to hopelessness and low self esteem. Authority and power is derived from the threat and use of violence ....
>
> Poverty is violence. One expression of the violence of poverty is hunger. Millions of Americans, almost half children, go hungry every day ... By spending money on bombs instead of food, our government perpetuates and exacerbates the violence of poverty by failing to provide food for everyone in need.

9. RYAN SCOTT HUTCHINSON (hereinafter "Hutchinson") is an Orlando resident and a member of Orlando Food Not Bombs, who dedicates time to sharing food with homeless individuals in public parks to call attention

to society's failure to provide food and housing to each of its members and to reclaim public space. He individually opposes the Code of the City of Orlando § 18A.09-1 and § 18A.09-2.

10. BENJAMIN B. MARKESON is a resident of Seminole County, Florida, and a member of Orlando Food Not Bombs, who dedicates time to sharing food with homeless individuals in public parks to call attention to society's failure to provide food and housing to each of its members and to reclaim public space. He individually opposes the Code of the City of Orlando § 18A.09-1 and § 18A.09-2.

11. ERIC MONTANEZ (hereinafter "Montanez") is an Orlando resident and a member of Orlando Food Not Bombs, who dedicates time to sharing food with homeless individuals in public parks to call attention to society's failure to provide food and housing to each of its members and to reclaim public space. He individually opposes the Code of the City of Orlando § 18A.09-1 and § 18A.09-2.

12. ADAM ULRICH (hereinafter "Ulrich") is an Orlando resident and a member of Orlando Food Not Bombs, who dedicates time to sharing food with homeless individuals in public parks to call attention to society's failure to provide food and housing to each of its members and to reclaim public space. He individually opposes the Code of the City of Orlando § 18A.09-1 and § 18A.09-2.

13. Defendant CITY OF ORLANDO is a municipal entity organized under the laws of the State of Florida, with the capacity to sue and be sued. It is the legal and political entity responsible for the actions of the Orlando Police Department (hereinafter "OPD"), which is a department of the City of Orlando. The City is sued for injunctive and declaratory relief and compensatory damages on the basis of the acts of officers, agents, and employees of OPD and the City, which were taken pursuant to official policy, practice, and/or custom. At all times relevant herein, the officers, employees, and agents of OPD and the City were acting under the color of state law.

## IV. STANDING

14. All Plaintiffs have standing because they fear harassment, arrest and prosecution for violating the Code of the City of Orlando § 18A.09-2. Plaintiffs are all advocates who use, have used, and intend to continue to use public park space for protected First Amendment speech, assembly and exercise of religious freedom. Plaintiffs desire to use public parks for sharing food with the hungry and/or homeless as they have been doing in the past. Whenever they engage in such activities, there exists the possibility for participants and hungry and/or homeless individuals to exceed 25 people. However, Plaintiffs have developed alternate solutions to provide meals to the hungry and/or homeless, but they hesitate to employ these solutions because they are less safe and they

diminish the effectiveness of Plaintiffs' efforts. For example, eating on the side of the road, not on park benches like everyone else, and using the hood of a parked car as a table endangers both Plaintiffs and the hungry and/or homeless as well as members of the public who drive past. Thus, the ordinance does not serve the city's purported interest in public safety. In addition, not being able to use the picnic tables in the city park is degrading and demeaning to the homeless and/or hungry. The possibility for Plaintiffs to be arrested, charged, and jailed still remains any time their activities occur in a public park. Thus, the requirements for Article III standing have been met.

## V. FACTS

15. Plaintiffs and other individuals and groups had been sharing food inside the picnic area of Lake Eola Park for more than a year, without causing any problems in the park, in the surrounding neighborhood or for area businesses. None of the Plaintiffs received any warnings or citations for violating any city ordinances.

16. Prior to the June 19, 2006, meeting of the Orlando City Council, an e-mail was sent on behalf of City Commissioner Patty Sheehan to members of the business community surrounding Lake Eola Park, strongly encouraging them to speak at the meeting in support of the ordinance. "The intent of this ordinance is

to try to move the large groups of homeless out of downtown," the e-mail message said.

17. One June 19, 2006, a prior version of the ordinance was passed on first reading by the Orlando City Council. The second reading was scheduled for July 7, 2006, but was postponed because the proposed ordinance was being redrafted.

18. On July 24, 2006, the Orlando City Council passed, by a vote of 5-2, an ordinance amending Chapter 18A of the Code of the City of Orlando. The ordinance includes a severability clause, providing that if any section of the ordinance were to be found unconstitutional, the validity of the remaining portion would not be affected.

19. The Code of the City of Orlando § 18A.09-2 provides:

> Except for activities of a governmental agency within the scope of its governmental authority, or unless specifically permitted to do so by a permit or approval issued pursuant to this Chapter or by City Council:
>
> (a) It is unlawful to knowingly sponsor, conduct, or participate in the distribution or service of food at a large group feeding at a park or park facility owned or controlled by the City of Orlando within the boundary of the Greater Downtown Park District without a Large Group Feeding Permit issued by the City Director of Families, Parks and Recreation or his/her designee.
>
> (b) It is unlawful to fail to produce and display the Large Group Feeding Permit during or after a large group feeding,

while still on site, to a law enforcement officer upon demand. It is an affirmative defense to this violation if the offender can later produce, to the City Prosecutor or the Court, a Large Group Feeding Permit issued to him/her, or the group, which was valid at the time of the event.

(c) The Director of Families, Parks and Recreation or his/her designee shall issue a Large Group Feeding Permit upon application and payment of the application fee as established by the City. Not more than two (2) Large Group Feeding Permits shall be issued to the same person, group, or organization for large group feedings for the same park in the GDPD in a twelve (12) consecutive month period.

(d) Any applicant shall have the right to appeal the denial of a Large Group Feeding Permit pursuant to appeal procedure in Sec. 18A.15 with written notice to the Director of Families, Parks and Recreation and with a copy to the City Clerk.

20. The City's reasons for amending its code to restrict feeding large groups of homeless are set forth in a preamble to the ordinance. The preamble states:

> WHEREAS, the City of Orlando encourages use of City owned or controlled parks by City residents in a safe, sanitary, and aesthetically pleasing atmosphere; and
>
> WHEREAS, unregulated large group feeding in public parks in the Greater Downtown Park District (GDPD)[1] has resulted in litter on park grounds and surrounding rights-of-way such as food, food containers, and other food wrappings, creating hazards to the health and welfare of citizens, birds, and animals, and is detrimental to the aesthetic atmosphere of parks; and
>
> WHEREAS, large group feeding in public parks in the GDPD require provision of adequate trash receptors and additional

---

[1] The ordinance creates the "Greater Orlando Park District," *see* Code of the City of Orlando § 18A.01(24), but uses the acronym GDPD.

> park personnel for inspection and clean up of park grounds which would be more manageable by advance notice and regulation of large group feedings through a permit system; and
>
> WHEREAS, the GDPD area is experiencing a steady and significant increase in residential and other growth and a corresponding competition for park space and usage by citizens; and
>
> WHEREAS, excessive use of parks and park facilities in the GDPD area for large group feeding by single persons or groups denies that park or facility space for use by other citizens, which placement of reasonable time restrictions on use would resolve; and
>
> WHEREAS, testimony before City Council has demonstrated that fear, intimidation, and criminal acts have accompanied or followed some large group feedings in some parks within the GDPD, affecting the safety and welfare of City residents; and
>
> WHEREAS, the City is committed to and has provided for and set aside reasonable, ample, alternative land space within the GDPD for large group feeding of the homeless by religious and other organizations which land is not covered by or affected by the restrictions of this ordinance; and
>
> WHEREAS, the current parks and park facilities in the GDPD, and future parks established by City Council in the GDPD, are particularly affected by all these conditions, and confining large group feeding regulations to only a few central downtown parks would likely cause the conditions to spill over or spread to adjacent or nearby parks in the GDPD.

21. The penalty for breach of a city ordinance is a fine not to exceed $500.00 and/or a term of imprisonment not to exceed sixty (60) days. *See* Code of the City of Orlando § 1.08.

21. Acting under color of the authority conferred upon them by the laws of the State of Florida and the Code of the City of Orlando, the Defendant has deprived Plaintiffs of their constitutional rights to free speech, free assembly

and association, free exercise of religion, equal protection under the law and due process.

22. On July 26, 2006, Plaintiffs and others served food from a van which was legally parked on Central Boulevard, about one block from Lake Eola Park. Trays and plates for the food were provided inside the park and the recipients walked to the van to receive their food. Once the food was served, people walked back into the park with their plates of food, along with bread and cups of juice, and ate at the picnic tables. Litter and trash was collected by Plaintiffs and others, and none was left in the park.

23. Approximately seven Orlando police officers were present at the food-sharing on July 26, 2006, observing and filming the activity. An individual in attendance at the food-sharing asked Officer Susan Brown if "food" included water, because the group wanted to distribute bottles of water to people waiting in the park. According to Orlando Police Department Information Report dated July 28, 2006, Officer Brown contacted City Prosecutor Kenneth Hebert by telephone and then advised the individual that she was unable to answer the question. Later, the same individual asked Officer Brown if distributing food near the park, in the manner described in Paragraph 22 above, was a violation of the ordinance. Officer Brown again contacted Hebert by phone and Hebert stated that he did not believe that was a violation of the ordinance. Officer Brown

passed that information on to the individual, who stated the group would then continue providing food in the manner described in Paragraph 22 above.

24. On August 2, 2006, Plaintiffs and others again served food from a van which was legally parked on Central Boulevard, about one block from the Lake Eola Park. The food was again served in the manner described in Paragraph 22 above. However, Lt. Jim Marchione of the Orlando Police Department advised those serving food that they were in violation of the Code of the City of Orlando § 18A.09-2 because the parking space was "adjacent" to the park. Lt. Marchione referenced a map showing the areas which the City now considered "adjacent" to the park. However, copies of the map were not provided to Plaintiffs.

25. According to Orlando Police Department Information Report dated August 4, 2006, Lt. Marchione attempted to present a "large group feeding" permit to Plaintiffs and others serving food on August 2, 2006. Plaintiffs did not apply for a permit,[2] nor did they accept the permit.

26. On August 9, 2006, Plaintiffs and others once again served food from the hood of a car parked legally on Pine Street, approximately 1½ blocks (and around a corner) from Lake Eola Park. The people who had been waiting at

---

[2] "The Director of Families, Parks and Recreation or his/her designee shall issue a Large Group Feeding Permit *upon application* and payment of the application fee as established by the City." Code of the City of Orlando § 18A.02(c) (emphasis added).

the park for the food-sharing followed Plaintiffs to the location on Pine Street. Police observed and filmed the food-sharing and kept the sidewalks and the street clear and open.

27. On August 14, 2006, once more Plaintiffs and other individuals and groups served food at City Commons Plaza,[3] in front of City Hall. An unsolicited "large group feeding" permit was offered to Plaintiff NICHOLS, but he declined it because the number of organizations involved made it impossible to determine if any group by itself had attracted 25 or more people.

28. On August 16, 2006, Plaintiffs and others again served food as described in Paragraph 26 above. Police again observed and filmed the activity.

29. On August 23, 2006, Plaintiffs and others served food from the grassy area between the street and the sidewalk near the corner of Osceola Avenue and Church Street, approximately 2½ blocks (and around a corner) from Lake Eola Park. The people who had been waiting at the park for the food-sharing followed Plaintiffs to the location on Church Street. This location was more hazardous than the areas previously used by Plaintiffs for food sharing, as nearby street construction work and a displaced stop sign combined to obscure

---

[3] City Commons Plaza is a city park. *See* Code of the City of Orlando § 18A.03.

the vision of some passing drivers or to distract their attention. One police officer approached Plaintiffs, warned them about keeping the sidewalk clear and then left.

30. On August 30, 2006, Plaintiffs and others again shared food downtown, near the corner of Pine Street and Osceola Avenue (about a block from Lake Eola Park), despite the rain from Tropical Storm Ernesto. The food was served in the manner described in Paragraph 29 above.

31. On Labor Day, Sept. 4, 2006, Plaintiffs and others provided food to the hungry and/or homeless in Lake Eola Park. Even after it started to rain, the food-sharing continued in the park but when the rain became heavier, Plaintiffs moved the food-sharing under the overhang of the building at the northwest corner of Central Boulevard and Osceola Avenue. One police officer observed part of the food-sharing.

32. A former parking lot, surrounded by a chain-link fence topped with barbed wire and having only one entrance/exit, has been provided by Defendant CITY OF ORLANDO as alternative space for large group feedings. This location is commonly known as "Sylvia Lane."[4] *See* map attached hereto and incorporated herein by reference as "Exhibit A."

---

[4] This location is just south of State Road 408 and east of the railroad tracks. South Garland Avenue becomes Sylvia Lane where it crosses under the 408.

33. Plaintiffs assert that Sylvia Lane is not "reasonable, ample, alternative land space," as the City claims to have provided in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2. To the contrary, the Sylvia Lane location is dangerous, as at least five other homeless individuals have been beaten in the immediate vicinity and one subsequently died from his injuries. Therefore, it does not serve the City's stated interest in public safety. In addition, the Sylvia Lane location does not serve the City's purported interest in sanitation, as it is equipped with portable toilets but does not provide running water or facilities for people to wash their hands before eating or serving food. Further, Sylvia Lane location does not provide an "aesthetic atmosphere," which Plaintiffs and hungry and/or homeless individuals are entitled to enjoy as equally as any other individuals in Orlando. *See* photographs attached hereto and incorporated herein by reference as "Composite Exhibit B." Finally, the Sylvia Lane location does not provide Plaintiffs with an ample alternative for communicating their message about the issues of poverty and homelessness to others in the Orlando community.

## VI. ALLEGATIONS COMMON TO ALL COUNTS

34. The governmental interests stated in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2, as set forth in Paragraph 20 above, are not compelling in that:

a. Although Defendant has stated an interest in preventing litter on park grounds and surrounding rights-of-way, in all the time that Plaintiffs have been sharing food in the park, none of them has ever been warned about, much less cited under, the city ordinance which prohibits littering on public property.[5] To the contrary, at each of Plaintiffs' food-sharings, at least one individual is responsible for collecting trash and ensuring that the site is clean and litter-free.

b. Although Defendant has stated an interest in prohibiting the creation of hazards to the health and welfare of citizens, birds, and animals, in all the time that Plaintiffs have been sharing food in the park, none of them has ever been warned about, much less cited under, the city ordinance which protects birds and animals on public property.[6] Nor was any testimony or other evidence of threats or harm to any birds or animals in city parks presented to the Orlando City Council during its hearings on the ordinance.

c. Although Defendant has stated an interest in advance planning for the provision of adequate trash receptors and additional park personnel for inspection and clean up of park grounds, no testimony or other

---

[5] Code of the City of Orlando § 43.75.

[6] Code of the City of Orlando § 43.74.

evidence of any need for additional trash receptors and/or park personnel was presented to the Orlando City Council during its hearings on the ordinance.

d. Although Defendant has stated an interest in regulating competition for park space and usage by citizens and preventing the denial of park or facility space for use by other citizens, no testimony or other evidence that others have been turned down because of too many requests for park use or that Plaintiffs' food-sharings have affected any other activities in the park was presented to the Orlando City Council during its hearings on the ordinance.

e. Although Defendant has stated an interest in preventing "fear, intimidation, and criminal acts [that] have accompanied or followed some large group feedings in some parks," in all the time that Plaintiffs have been sharing food in the park, none of them has ever been warned about, much less cited under, the city ordinances which prohibit disorderly conduct and other criminal activity.[7] Although several persons[8] spoke before the Orlando City Council of experiences with relatively minor criminal activity, none described

---

[7] Code of the City of Orlando § 43.06 (prohibiting disorderly conduct); §43.30 (prohibiting state misdemeanors); *see also* §§ 18A.02, 18A.03, 18A.05, 18A.06, 18A.07 (providing for the immediate arrest of any person who enters or remains in a park after closing time).

[8] During the July 24, 2006, meeting of the Orlando City Council, 9 people spoke in favor of the ordinance and 43 spoke in opposition to it.

any problem not already addressed by other city ordinances.[9] None of the speakers was sworn to tell the truth nor did any of them present any documentary evidence to verify their statements. Most importantly, none of them established any connection whatsoever to Plaintiffs' food-sharings.

f. Although Defendant has provided what it calls "reasonable, ample, alternative land space" at the Sylvia Lane location described in Paragraphs 32 and 33 above, the location is unsafe, unsanitary and unaesthetic.

g. Finally, Defendant's underlying interests in moving the homeless out of downtown and restricting the feeding of the homeless are not compelling government interests.

## VII. CAUSES OF ACTION

### First Cause of Action
### Violation of Florida's Religious Freedom Restoration Act of 1998

35. Plaintiffs NICHOLS and VAGABONDS adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

36. Florida's Religious Freedom Restoration Act, FLA. STAT. § 761.02 *et seq.*, provides that the government shall not substantially burden a person's exercise of religion, unless the burden is in furtherance of a compelling

---

[9] *See, e.g.*, Code of the City of Orlando § 43.86 (restricting places for and manner of panhandling); *see also* ordinances cited in Footnote 8 above.

governmental interest and is the least restrictive means of furthering that compelling governmental interest. FLA. STAT. § 761.03(1).

37. Plaintiffs NICHOLS and VAGABONDS are required by their sincere religious beliefs to feed the hungry and homeless.[10]

38. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 place a substantial burden on these Plaintiffs' practice of feeding the hungry and/or homeless.

39. The governmental interests stated in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2, as set forth in Paragraph 20 above, are not compelling for the reasons specified in Paragraph 34 above.

40. Even if the city's stated interests are found to be compelling, the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are not the least restrictive means of furthering those interests.

---

[10] The concept of acts of charity as an essential part of religious worship is a central tenet of all major religions, both Christian and non-Christian. *E.g., Western Presbyterian Church v. Board of Zoning Adjustment of District of Columbia*, 862 F. Supp. 538 (D.D.C. 1994) For example, in the Gospel of St. Matthew, Jesus describes the separation of the saved from the damned on Judgment Day and says to the saved: "Come ye blessed of my father, inherit the kingdom prepared for you from the foundation of the world. For I was hungry and you gave me meat, I was thirsty and you gave me drink ..." When the saved respond by expressing surprise and wonder as to when they did these things, He tells them: "Inasmuch as you have done it unto one of the least of these my brethren, you have done it unto me." 25 *Matthew* 34-40.

**Second Cause of Action**
**Violation of the right of free exercise of religion guaranteed by the First and Fourteenth Amendments to the United States Constitution**

41. Plaintiffs NICHOLS and VAGABONDS adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

42. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate the right to free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution, both facially and as applied by Defendant.

43. The ordinance substantially burdens the ability of these Plaintiffs to practice their religion and prevents them from engaging in conduct that forms a core practice of their religion. Specifically, the ministry of Plaintiffs NICHOLS and VAGABONDS would likely cease to exist if the ordinance is allowed to stand. These Plaintiffs must be active in the downtown area because homeless people congregate there to access social services, including but not limited to Health Care for the Homeless and the Coalition for the Homeless.

44. The Code of the City of Orlando § 18A.09-2 impermissibly prefers secular activities of "City licensed or contracted concessionaires, lessees, or licensees" and those "specifically permitted to do so by a permit or approval issued pursuant to this Chapter or by City Council," while restricting the

religious practices of Plaintiffs VAGABONDS and NICHOLS. Specifically, the ordinance allows secular activities which include the selling of food, including but not limited to the Sunday Market at Lake Eola Park, while limiting to two times per year per park religious activities which include giving food to the hungry and homeless in accordance with these Plaintiffs' religious beliefs.

45. Defendant has no legitimate or compelling reason for placing a substantial burden on these Plaintiffs' ability to practice their religious beliefs, for the reasons specified in Paragraph 34 above.

46. That a substantial burden on these Plaintiffs' free exercise of religion violates the First Amendment was clearly established law of which a reasonable person in Defendant's position would have known.

47. Defendant undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of these Plaintiffs.

48. As a direct and proximate result of Defendant's actions and custom and practice, these Plaintiffs are, out of a fear of being arrested and/or ticketed, chilled and deterred from exercising their constitutionally protected freedom of religion rights.

**Third Cause of Action**
**Violation of the right of free assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution**

49. Plaintiffs adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

50. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate the right to free assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution, both facially and as applied by Defendant.

51. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are overbroad and are not a reasonable time, place, and manner restriction.

52. The ordinance as applied is invalid because Defendant CITY OF ORLANDO is using it in a content-based manner to target feeding homeless individuals. On information and belief, employees and agents of Defendant CITY OF ORLANDO have not harassed, ticketed or arrested other individuals engaged in picnics or other activities involving the distribution of food in city parks.

53. Defendant has no compelling interest for restricting Plaintiffs' right to freely assemble in city parks, for the reasons set forth in Paragraph 34 above.

54. As a direct and proximate result of Defendant's actions and custom and practice, Plaintiffs are, out of a fear of being arrested and/or ticketed, chilled and deterred from exercising their constitutionally protected freedom of assembly rights.

**Fourth Cause of Action**
**Violation of the right of freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution**

55. Plaintiffs adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

56. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are an unconstitutional infringement, on its face, of the Plaintiffs' affirmative rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

57. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are an impermissible content-based restriction. It seeks to limit constitutionally protected speech and manners of expression based on the viewpoint of the speaker, at all times, and in locations in which the expression limited is not basically incompatible with the normal activity of the location. Although

§§ 18A.09-1 and 18A.09-2 aim to serve a compelling government interest, it is not narrowly tailored.

58. The governmental interests stated in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2, as set forth in Paragraph 20 above, are not compelling for the reasons specified in Paragraph 34 above.

59. Even if the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are a content-neutral restriction on speech, they are not narrowly drawn and do not provide ample alternative times, locations, or methods for the prohibited speech and expressive activity.

60. On its face, the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are a prior restraint on speech, as they bar lawful speech and expressive activity in traditional public fora, and grant to public officials the power to deny use of a forum in advance of actual expression. The ordinance does not contain narrow, objective, and definite standards to guide the licensing authority and it lacks procedural safeguards to ensure against unlawful infringement on protected speech. Although § 18A.09-2 requires individuals to have a permit to engage in protected speech activities, it fails to procedurally and formally: establish substantive constraints on the person who oversees the applications; or place time constraints on issuance or denial of permits. The ordinance also fails to allow for spontaneous speech activity in traditional public fora.

61. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are overbroad, as they sweep into their ambit constitutionally protected speech. The ordinance is not narrowly tailored to meet the City's purported interests in public safety, sanitation and "the aesthetic atmosphere of parks," as it prohibits all speech and expressive activity other than that "specifically permitted ... by a permit or approval issued pursuant to this Chapter or by City Council." This distinction of permissible speech has no bearing on public safety or any of the CITY's stated interests.

62. As a direct and proximate result of Defendant's actions, Plaintiffs are deprived of their right to free speech in quintessential public fora, and the statute has a chilling effect on constitutionally protected expression. Plaintiffs have suffered, and continue to suffer, irreparable harm and have been damaged as a direct result of this conduct.

**Fifth Cause of Action**
**Violation of the Equal Protection Clause**
**of the Fourteenth Amendment**
**to the United States Constitution**

63. Plaintiffs adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

64. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are an unconstitutional infringement, on its face, of the Plaintiffs' affirmative right to

Equal Protection under the Fourteenth Amendment to the U.S. Constitution.

65. The Code of the City of Orlando § 18A.09-2 prefers speech and expressive conduct of "City licensed or contracted concessionaires, lessees, or licensees" and those "specifically permitted to do so by a permit or approval issued pursuant to this Chapter or by City Council," while placing a wholesale restriction on the speech and expressive activity of all other individuals. In doing so, it impermissibly prefers the viewpoints of persons licensed, permitted or "approved" by the City, but prohibits all other viewpoints.

66. Although the government's interest in public safety is substantial, the ordinance is not narrowly drawn to further the City's purported interests.

67. The governmental interests stated in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2, as set forth in Paragraph 20 above, are not compelling for the reasons specified in Paragraph 34 above.

68. As a direct and proximate result of officers' actions pursuant to Defendant's official policy, practice, and/or custom, Plaintiffs have been deprived their right to equal protection under the law. Plaintiffs have suffered, and will continue to suffer, irreparable harm and have been damaged as a direct result of this conduct.

**Sixth Cause of Action**
**Violation of the right to due process**
**guaranteed by the Fourteenth Amendment**
**to the United States Constitution**

69. Plaintiffs adopt, incorporate herein and reallege Paragraphs 1 through 34, as if fully set forth below.

70. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate the due process clauses of the Fourteenth Amendment to the United States Constitution, both facially and as applied by the Defendant.

71. On its face, the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 unconstitutionally infringe Plaintiffs' affirmative right to due process of the law, a right guaranteed by the Fourteenth Amendment of the U.S. Constitution.

72. The Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are void for vagueness.

73. The language of the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 do not convey a sufficiently definite warning as to the proscribed conduct so that the ordinary citizen can understand what acts are unlawful. Agents and employees of Defendant CITY OF ORLANDO have been unable to clarify what acts are unlawful. The ordinance fails to define the term "food" and when city agents were asked to clarify, they have been unable to provide a

definition, making it unclear what behavior is prohibited. Further, Defendant has interpreted "adjacent sidewalks and rights-of-way" differently on different days, making inconsistent statements as to where food distribution is or is not allowed.

74. The Code of the City of Orlando § 18A.09-2 also fails to establish minimal guidelines to govern law enforcement, leaving police officers unbridled discretion to determine whether an event is "likely to attract 25 or more people," thus allowing for arbitrary and discriminatory enforcement.

75. By authorizing large group feedings "specifically permitted to do so by a permit or approval issued pursuant to this Chapter or by City Council," the Code of the City of Orlando § 18A.09-2 suggests that some additional process for obtaining "approval" exists. However, the ordinance fails to provide any guidelines or standards for seeking such "approval."

76. The vague portions of the ordinance are so inherent to its meaning that they cannot be severed from the statute. The entire statute should be stricken.

77. The governmental interests stated in the preamble to the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2, as set forth in Paragraph 20 above, are not compelling for the reasons specified in Paragraph 34 above.

78. As a direct and proximate result of officers' actions pursuant to Defendant's policy, practice, and/or custom, Plaintiffs have been deprived their

right to due process of the law. Plaintiffs have suffered, and will continue to suffer, irreparable harm and have been damaged as a direct result of this conduct.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

a. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the free exercise of religion clause of the First Amendment to the United States Constitution;

b. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate Florida's Religious Freedom Restoration Act, FLA. STAT. § 761.02 *et seq.*;

c. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the free assembly clause of the First Amendment to the United States Constitution;

d. **DECLARE** the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the free speech clause of the First Amendment to the United States Constitution;

e. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the equal protection clause of the Fourteenth Amendment to the United States Constitution;

f. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 violate, both facially and as applied by the Defendant, the right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution;

g. **DECLARE** that the Code of the City of Orlando §§ 18A.09-1 and 18A.09-2 are unconstitutionally vague and overbroad;

h. **ISSUE** an injunction prohibiting enforcement of the Code of the City of Orlando § 18A.09-2;

i. **AWARD** damages in an amount to be determined at the time of trial;

j. **AWARD** reasonable costs and attorneys' fees;

k. **GRANT** such further relief as this Court may deem proper and just.

Jacqueline Dowd, Esquire
Florida Bar No. 714410
809 E. Harwood St.
Orlando FL 32803
Telephone: 407-353-0470
Fax: 407-281-9833
E-mail: jacquelinedowd@yahoo.com

TRIAL COUNSEL FOR PLAINTIFFS
and Cooperating Attorney
for the American Civil Liberties Union
Foundation of Florida, Inc.,
Central Florida Chapter

YAHOO! LOCAL Maps




When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

EXHIBIT A



Photograph B-1: Panoramic view of Sylvia Lane site.




Photograph B-2: The Sylvia Lane location does not have running water or facilities for people to wash their before eating or serving food.

**Composite Exhibit "B"**




Photograph B-3: This sign hangs on the fence at the Sylvia Lane location.

**Composite Exhibit "B"**