**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FIRST VAGABONDS CHURCH OF GOD,**
**BRIAN NICHOLS, ORLANDO FOOD**
**NOT BOMBS, RYAN SCOTT**
**HUTCHISON, BENJAMIN B.**
**MARKESON, ERIC MONTANEZ and**
**ADAM ULRICH,**

        **Plaintiffs,**

**-vs-**                            **Case No.  6:06-cv-1583-Orl-31KRS**

**CITY OF ORLANDO, FLORIDA,**

        **Defendant.**

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 33) and Plaintiffs' Responses thereto (Docs. 42 and 43). Oral argument was held on March 26, 2008.

**I. Background**

Plaintiff First Vagabonds Church of God ("FVCG") is a religious organization, Plaintiff Brian Nichols ("Nichols") is the pastor of that organization. (Doc. 20 at 3). FVCG has approximately 43 members and has been conducting services on Sundays at 1:00 p.m. in Langford Park since Easter of 2006.

Plaintiff Orlando Food Not Bombs ("OFNB") is an unincorporated association affiliated with the international Food Not Bombs movement. This group shares food with homeless and hungry people at Lake Eola Park to draw attention to "society's failure to provide food and housing to each of its members and to reclaim public space." (Doc. 20 at 4). The remainder of the Plaintiffs are members of OFNB (along with OFNB, they will be collectively referred to hereinafter as "the OFNB Plaintiffs"). (Doc. 20 at 5).

Plaintiffs allege that the City of Orlando ("the City") has violated the Florida Religious Freedom Reformation Act ("FRFRA"), as well as several of their rights under the United States Constitution, by enacting an ordinance[1] that requires anyone conducting a "large group feeding"

---

[1] The challenged ordinance reads:

**Large Group Feeding in Parks and Park Facilities Owned or Controlled by the City in the Greater Downtown Park District (GDPD).**
Except for activities of a governmental agency within the scope of its governmental authority, or unless specifically permitted to do so by a permit or approval issued pursuant to this Chapter or by City Council:
(a)  It is unlawful to knowingly sponsor, conduct, or participate in the distribution or service of food at a large group feeding at a park or park facility owned or controlled by the City of Orlando within the boundary of the Greater Downtown Park District without a Large Group Feeding Permit issued by the City Director of Families, Parks and Recreation or his/her designee.
(b)  It is unlawful to fail to produce and display the Large Group Feeding Permit during or after a large group feeding, while still on site, to a law enforcement officer upon demand. It is an affirmative defense to this violation if the offender can later produce, to the City Prosecutor or the Court, a Large Group Feeding Permit issued to him/her, or the group, which was valid at the time of the event.
(c)  The Director of Families, Parks and Recreation or his/her designee shall issue a Large Group Feeding Permit upon application and payment of the application fee as established by the City. Not more than two (2) Large Group Feeding Permits shall be issued to the same person, group, or organization for large group feedings for the same park in the GDPD in a twelve (12) consecutive month period.
(d)  Any applicant shall have the right to appeal the denial of a Large Group Feeding Permit

within the Greater Downtown Park District ("GDPD") to first obtain a permit from the City. Code of the City of Orlando § 18A.09-2. The ordinance limits the number of permits any group can receive to two per park within a twelve-month period. Code of the City of Orlando § 18A.09-2. "Large group feedings" are defined as events that intend to attract, actually attract, or are likely to attract 25 or more people. Code of the City of Orlando § 18A.01(23). The GDPD is a circular area that extends out a 2 mile radius in all directions from City Hall. Code of the City of Orlando § 18A.01(24). The City states that there are approximately forty-two public parks within the GDPD. (Doc. 33 at 3).

For more than a year, Plaintiffs have been serving free food to the homeless within the GDPD. (Doc. 20 at 7).[2] This new ordinance will require the groups to obtain permits for these events and either relocate the feedings to a new park within the GDPD every other week or limit the events to two per year. Violation of the ordinance is punishable by a fine of up to $500 and/or up to 60 days imprisonment. (Doc. 20 at 11) (citing Code of the City of Orlando § 1.08).

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to

---

> pursuant to appeal procedure in Section 18A.15 with written notice to the Director of Families, Parks and Recreation and with a copy to the City Clerk.

Code of the City of Orlando § 18A.09-2 (bold type in original).

[2]Defendant does not contest that Plaintiffs fall within the "Large Group Feeding" provision of the ordinance.

the case. .*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the

motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

    *A) Count I: Florida's Religious Freedom Restoration Act*[3]

In order to establish a claim under FRFRA, "a plaintiff must only establish that the government has placed a substantial burden on a practice motivated by a sincere religious belief." *Warner v. City of Boca Raton,* 887 So. 2d 1023, 1032 (Fla. 2004). The City argues that Plaintiffs cannot establish that the ordinance places a "substantial burden" on their religious practices because the group is still permitted to provide food to the homeless, subject to "time, place and manner" restrictions. (Doc. 33 at 8).

Under FRFRA "a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." *Warner,* 887 So. 2d at 1033.

Nichols states that his "religious beliefs mandate not just that [he] share the word of God, but that [he] share the love of God through food and clothing to those in need." (Doc. 42-2 at 2).[4] The City argues that the ordinance does not forbid him, or any of the members of FVCG, from engaging in that conduct, but instead only makes that conduct inconvenient, which does not amount to a violation of FRFRA. *See Warner*, 887 So. 2d at 1035. Conversely, Plaintiffs argue

---

[3]This Count is asserted only by Nichols and FVCG.

[4]It is undisputed that the feedings are part of Plaintiffs' religious services.

that the ordinance amounts to a substantial burden because its practical application precludes Nichols from conducting his religious services.[5]

In support of this argument, the members of FVCG have produced evidence that, given the limited means of communication and transportation available to them, there is at least a possibility that these limitations would prevent a substantial portion of the FVCG congregation from learning of and traveling to these services, making the ordinance more than a mere inconvenience. The resolution of this issue involves disputed issues of material fact that cannot be resolved by summary judgment.

*B) Count II: Free Exercise of Religion*[6]

> In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993) (hereinafter "*Lukumi*"). FVCG and Nichols offer no real argument that this law is anything other than content neutral. Therefore, this Court will apply the rational basis test to determine whether the ordinance is constitutional. "Under this test, a rationally based, neutral law of general applicability does not violate the right to free exercise of religion even though the law incidentally burdens a particular

---

[5]Plaintiffs argue that the ordinance amounts to a substantial burden because, unlike the Plaintiffs in *Daytona Rescue Mission, Inc. v. The City of Daytona Beach*, 885 F. Supp. 1554 (M.D. Fla. 1995), FVCG has "no where else to go besides downtown public parks to fulfill their religious mandate." (Doc. 42 at 9).

[6]This Count is also asserted only by Nichols and FVCG.

religious belief or practice." *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (citing *Employment Division v. Smith*, 494 U.S. 872, 879 (1990)).

Defendant, however, makes virtually no argument regarding the rational basis for the law. Instead, the City simply states that it "has a significant interest in maintaining the parks in the GDPD and making them accessible for all large groups, religious or not, that want to serve or deliver food there." (Doc. 33 at 14). At oral argument the City also stated that the ordinance promotes public safety, public health and sanitation, as well as preventing overuse of the parks. While these may be legitimate interests of the City, there is no evidence that moving group feedings from one park to another would help to alleviate these concerns. Therefore, the City is not entitled to summary judgment on this claim.

*C) Count III: Free Assembly*

In Count III, Plaintiffs allege that the ordinance violates their right to peaceful assembly under the First Amendment. Plaintiffs argue that Defendant has failed to appropriately move for summary judgment on this Count. Indeed, Defendant has not offered any argument or case law regarding this count. Defendant mentions free assembly only twice, and both times it appears that Defendant is simply grouping this claim with the free speech claim. Therefore, the City has failed to meet its burden with regard to Count III.[7]

---

[7]Both parties have also referred to the right to expressive association in their arguments. However, this right is not mentioned in the complaint and Defendant admitted at oral argument that it did not properly argue about this claim in its motion. Therefore, this Court will not address it.

*D) Count IV: Free Speech*

The OFNB Plaintiffs bring both a facial free speech challenge and an as-applied free speech challenge to the ordinance. Plaintiffs' facial challenge is without merit because the conduct regulated by the ordinance is not, on its face, an expressive activity. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n5 (1984) and *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996)). Therefore, this Court turns to the as-applied challenge, and must decide whether the specific actions of the OFNB Plaintiffs amount to expressive conduct.

> The First Amendment literally forbids the abridgment only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," we have acknowledged that conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments."
>
> In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Texas v. Johnson*, 491 U.S. 397, 404 (1989) (internal citations omitted).

It is undisputed that the OFNB Plaintiffs intend to convey a message when they distribute food to the homeless in public parks. Thus, the issue to be resolved is the likelihood that the message would be understood by those who viewed the conduct. Defendant argues that the distribution of food is not expressive conduct because it is "not a form of conduct integral to, or commonly associated with, expression." (Doc. 33 at 20).

The OFNB Plaintiffs seek to provide food to homeless people in what they describe as a middle and upper-middle class area of the City. (Markeson Aff. at 5). The message they are trying to convey is that society has failed to provide food to each of its members. For their purposes, the OFNB Plaintiffs cite to *Community for Creative Non-Violence v. Watt* ("*Watt*"), in which the D.C. Circuit found the following conduct to be expressive:

> The protestors choose to sleep, purposely across from the White House and Capitol grounds, in sparsely appointed tents which the Park Service has already designated as undeniably "symbolic." Their permit application states that this conduct is intended to send the same message as this court recognized was sent in [Plaintiff's] 1981-82 demonstration: that the problems of the homeless will not simply disappear into the night. Unlike the thousands of homeless men and women whose nights are spent on grates, in doorways, or in back alleys, these demonstrators propose to sleep within the conspicuous context of two organized demonstration sites that create a backdrop – by the combined use of structures, explanatory signs, and verbal discourse – to ensure that the message sought to be sent by the demonstrators' conduct will, in all likelihood, be received.

*Watt*, 703 F.2d 586, 593 (D.C. Cir. 1983).

Plaintiffs also cite *United States v. Abney*, another D.C. Circuit case in which the Court held that "within the context of an individual's round-the-clock vigil, sleeping could be taken as 'sufficiently expressive in nature to implicate First Amendment scrutiny in the first instance.'" *Watt*, 703 F.2d at 593 (citing *Abney*, 534 F.2d 984, 985 (D.C. Cir. 1976)). The Plaintiff in *Abney* was conducting a round-the-clock vigil outside of the Veteran's Administration office in Texas to protest the denial of his application for disability benefits. *Abney*, 534 F.2d at 985. "During at least a portion of the time [t]here involved Abney carried picket signs announcing his grievance. When he slept he apparently stuck the signs in the ground at his feet on some occasions." *Id.*

In both *Abney* and *Watt,* the context was an important element in determining whether the conduct was expressive. Here, the feedings take place in Lake Eola Park in downtown Orlando.[8] Plaintiffs indicate that they convey their message in one-on-one conversations with passers-by who ask what they are doing there and why they are doing it. (Markeson Aff. at 6). At oral argument, the OFNB Plaintiffs also stated that they use t-shirts, buttons and signs to convey their message. Given this context, it is possible that the conduct of feeding people could be expressive and therefore, the Defendant is not entitled to summary judgment on this claim.

*E) Count V: Equal Protection*

Plaintiffs allege that the ordinance violates the equal protection clause of the Fourteenth Amendment because exemptions to the ordinance have been granted to commercial vendors that have contracts with the City.

> The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). But so too, "[the] Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). The initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

*Plyler v. Doe*, 457 U.S. 202, 216-217 (1982).

---

[8] The City concedes that Lake Eola Park is Orlando's signature park; its image being used as a symbol of the city itself.

This Court finds no merit to Plaintiffs' contention that the exemptions to the ordinance violate the Equal Protection Clause. The exemptions are provided to commercial vendors that have contracts with the City. Therefore, the class of persons who are not granted exemptions includes anyone who is not a commercial vendor and any commercial vendor unwilling to enter into a contract with the City. This is not a classification based on homelessness and it is not an instance where similarly situated persons are treated differently. Accordingly, Defendant is entitled to summary judgment on this claim.

*F) Count VI: Due Process*

Finally, Plaintiffs allege that the ordinance is unconstitutionally vague. (Doc. 43 at 17). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

First, Plaintiff argues that the ordinance is vague because a person of ordinary intelligence would not be able to determine what is meant by the terms "food" or "adjacent". The term "adjacent" does not appear in the ordinance, so that argument is irrelevant.[9] As for the definition of "food", the OFNB Plaintiffs describe a particular instance in which a law enforcement officer could not determine whether water was considered "food" under the ordinance.

---

[9] Plaintiffs allege that, on August 2, 2006, Lt. Jim Marchione of the Orlando Police Department informed members of OFNB that the ordinance applied to areas "adjacent" to parks as well. (Doc. 20 at 12). However, it appears from the language of the ordinance that Lt. Marchione was incorrect as the ordinance specifically refers to feedings "at a park or park facility" in the GDPD.

Plaintiffs also argue that the ordinance is ambiguous as to whether multiple groups can feed a greater number of people at one time without an ordinance. Finally, Plaintiffs argue that police officers have unbridled discretion to determine whether an event is "likely to attract 25 or more people."

While these terms may be open to interpretation, they are not unconstitutionally vague. Therefore, the City is entitled to summary judgment on this claim as well.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED** in part and **DENIED** in part. This Order constitutes a final ruling in Defendant's favor as to Counts V and VI, and judgment will be entered accordingly when all of Plaintiffs' claims have been resolved.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 31, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party